# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFREY A. HOLDEN, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )    Case No. CIV-14-174-D |
| | ) |
| MIKE ADDISON, Warden, | ) |
| | ) |
|     Respondent.[1] | ) |

## REPORT AND RECOMMENDATION

Petitioner Jeffrey A. Holden, an Oklahoma state prisoner appearing pro se, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus on February 24, 2014 (Doc. No. 1, "Petition") and a brief in support of the Petition on April 24, 2014 (Doc. No. 5). United States District Judge Timothy D. DeGiusti referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). After

---

[1] The docket sheet in this matter also identifies the Attorney General of the State of Oklahoma as a Respondent. The proper respondent when a petitioner "is currently in custody under a state-court judgment" is "the state officer who has custody" of the petitioner. *See* R. 2(a), Rules Governing § 2254 Cases in the United States District Courts ("Section 2254 Rules"). Thus, the only proper respondent in this matter is the warden of the state-operated facility in which Petitioner is incarcerated, i.e. the warden of Joseph Harp Correctional Center ("JHCC") in Lexington, Oklahoma. The Court Clerk is therefore directed to terminate the Attorney General of the State of Oklahoma as a party in this matter. Further, the undersigned notes that Mike Addison is no longer the JHCC Warden and has been replaced by Michael Shelite, Acting Warden. *See Joseph Harp Correctional Center*, Okla. Dep't of Corr., http://www.ok.gov/doc/Organization/Field_Operations/East_Institutions/Joseph_Harp_C orrectional_Center.html (last visited Mar. 11, 2015). In this Report and Recommendation, the undersigned recommends a full disposition of this matter. If this recommendation is not adopted, Mr. Shelite may need to be substituted for Mr. Addison as Respondent. *See* Fed. R. Civ. P. 25(d), 81(a)(4); Section 2254 R. 2(a).

examining Petitioner's filings, the undersigned ordered Respondent to file an answer or a motion to dismiss in lieu of an answer, as appropriate. Order, Doc. No. 6; *see* 28 U.S.C. §§ 2241, 2244, 2254; R. 1(a)(1), 4, 5, 7, 8 of Rules Governing § 2254 Cases in the United States District Courts; LCvR 9.2(c). This matter is now before the Court on Respondent's motion to dismiss the Petition based on untimeliness (Doc. No. 8), which was filed along with a brief in support (Doc. No. 9) and exhibits (Doc. Nos. 9-1 to 9-11).

## BACKGROUND

*A. State Court Proceedings*

On January 17, 2007, Petitioner pled guilty to the charges pending against him in the District Court of Oklahoma County, Oklahoma: two counts of first-degree rape and one count of first-degree burglary. *State v. Holden*, No. CF-2005-5216 (Okla. Cnty. Dist. Ct. Jan. 17, 2007); *see also* Pet., Doc. No. 1, at 1; Resp't's Br. Ex. 1, Doc. No. 9-1 (copy of electronic docket sheet in No. CF-2005-5216).[2] On February 7, 2007, in accordance with the plea agreement, Petitioner was sentenced to imprisonment for 45 years on each count of first-degree rape and for 20 years on the count of first-degree burglary. *State v. Holden*, No. CF-2005-5216 (Okla. Cnty. Dist. Ct. Feb. 7, 2007); Resp't's Br. Ex. 2, Doc. No. 9-2; Pet. at 1. The sentences were ordered to run concurrently with a portion of the sentences suspended. *State v. Holden*, No. CF-2005-5216 (Okla. Cnty. Dist. Ct. Feb. 7, 2007); Resp't's Br. Ex. 2, Doc. No. 9-2; Pet. at 1.

---

[2] Citations to documents filed with the Court use the page numbers assigned by the Court's electronic filing system.

On November 21, 2011, Petitioner filed a petition seeking habeas corpus relief in Oklahoma County District Court, which was dismissed on March 12, 2012. Resp't's Br. Exs. 3-4, Doc. Nos. 9-3 to 9-4. On March 28, 2012, Petitioner filed an application for postconviction relief in Oklahoma County District Court, which was denied on June 29, 2012. That denial was affirmed by the Oklahoma Court of Criminal Appeals on July 12, 2013. Resp't's Br. Exs. 5-8, Doc. Nos. 9-5 to 9-8. The United States Supreme Court denied Petitioner's petition for a writ of certiorari on January 27, 2014. Resp't's Br. Ex. 9, Doc. No. 9-9.

B. *Federal Habeas Petition Under 28 U.S.C. § 2254*

As noted, Petitioner filed the Petition that is now before the Court on February 24, 2014. In his Petition, Petitioner asserts four grounds for relief, including one or more grounds that he characterizes as involving "actual innocence." *See* Pet. at 3, 4, 6, 7, 9. In explaining the timeliness of his Petition, Petitioner contends that because he is asserting actual innocence claims, no procedural or time bars apply to the Petition. Pet. at 9. Petitioner requests that his convictions in No. CF-2005-5216 be vacated with prejudice or that his "charges [be reduced] to a non-violent felony without any time left to serve." Pet. at 10; *see also* Pet'r's Br., Doc. No. 5, at 11. Respondent has moved to dismiss the Petition, asserting that Petitioner's claims are time-barred and that Petitioner is not entitled to tolling or to an equitable exception as to this limitation. Resp't's Mot. to Dismiss, Doc. No. 8; Resp't's Br., Doc. No. 9, at 1-8. Petitioner filed a response in opposition to the motion. Pet'r's Resp., Doc. No. 11.

Petitioner's four grounds for relief are discussed below.

1. Ground Three

In Ground Three, Petitioner asserts that he was denied counsel during an interrogation that occurred shortly after his arrest on September 9, 2005. *See* Pet. at 6-7; Pet'r's Br. at 1, 7. Petitioner alleges that after his arrest, an official sought to swab Petitioner's mouth to obtain a DNA sample, and Petitioner asked, "'Well, don't we have to talk to my lawyer about all that?'" The official responded "[n]o" and that a warrant had been obtained. *See* Pet. at 6; Pet'r's Br. at 1, 7-9. Petitioner does not allege that he made any statements during this alleged interrogation or that the DNA sample or any statements made by Petitioner were ever admitted in court as evidence of Petitioner's guilt. As previously stated, Petitioner's convictions at issue herein resulted from entry of his plea of guilty.

2. Ground Four

In Ground Four, Petitioner asserts that before entering his guilty plea in January 2007, he was not fully advised regarding his eligibility for an early release. Petitioner contends that, although he was advised of the "85% rule," which requires him to serve 85% of each sentence before becoming eligible for parole, he was not advised regarding his ineligibility to earn "credits" to reduce his sentences. Pet. at 7; Pet'r's Br. at 3, 9-10 (citing *Verduzco v. State*, 217 P.3d 625 (Okla. Crim. App. 2009); *Pickens v. State*, 158 P.3d 482 (Okla. Crim. App. 2007); *Ferguson v. State*, 143 P.3d 218 (Okla. Crim. App. 2006)); *see also* Okla. Stat. tit. 21, §§ 12.1, 13.1 (85% rule provisions); Okla. Stat. tit. 57, § 138(E)(15), (E)(28) (reflecting ineligibility for earned credits upon conviction for first-

degree burglary and first-degree rape, respectively); Resp't's Br. Ex. 2 at 1 (Petitioner's judgment and sentence).

   3. Ground Two

In Ground Two, Petitioner contends that he entered into his plea agreement involuntarily due to coercion "with regard to a portion of the plea" and due to his plea counsel's alleged misrepresentations to Petitioner regarding DNA evidence. Pet. at 4; Pet'r's Br. at 6-7. Petitioner further suggests that his plea was involuntary because he "refused" to personally write the statement of the factual basis for his plea; the factual-basis statement was subsequently handwritten by Petitioner's counsel, who instructed Petitioner to initial the statement. *See* Pet. at 4; Pet'r's Br. at 3; *see also* Resp't's Br. Ex. 2 at 9 (reflecting Petitioner's initials on statement), 10 (reflecting that attorney completed form and reviewed form with Petitioner who "underst[oo]d its contents and agree[d] with the answers"), 11 (reflecting Petitioner's signature attesting to truth and correctness of plea, including factual basis). In support of his coercion-based allegation, Petitioner references a September 2007 letter received from his plea counsel. Pet. at 4; Pet'r's Br. at 6-7; Resp't's Br. Ex. 3, Doc. No. 9-3, at 3-4. The letter states, in relevant part:

> As a part of the plea bargain you agreed not to ask for a modification [of your sentence]. I don't feel bound by that agreement because you were coerced into it and it was not binding anyway. If by some miracle the judge decided to modify your sentence I don't expect her to modify it much.

Resp't's Br. Ex. 3 at 4; *see also id.* at 1-2; Resp't's Br. Ex. 2 at 18 (Waiver of Right to Request Sentence Modification). From counsel's phrasing, it is unclear whether counsel

5

is referring only to the waiver of the right to seek sentence modification or to the plea agreement in its entirety.

In support of his misrepresentations-based allegation, Petitioner states that in January 2007, he was advised by his plea counsel to plead guilty because "the State had a [DNA] 'match' and overwhelming evidence against him." *See* Pet'r's Br. at 2. Petitioner suggests that a November 2005 Oklahoma State Bureau of Investigation ("OSBI") laboratory report, discussed below, supports the assertion that his plea counsel misrepresented the DNA evidence. *See* Pet'r's Br. at 2, 3.

4. Ground One

In Ground One, Petitioner asserts that the "DNA [evidence] does not positively identify [him] and was potentially contaminated" as to the sample obtained from Petitioner after his arrest in September 2005. *See* Pet. at 3; Pet'r's Br. at 1. In his Brief, Petitioner asserts that at a pretrial evidentiary hearing on October 20, 2006, the state prosecutor "admit[ted] the DNA is not a positive match" but also stated that Petitioner "'cannot be excluded as a *potential* donor for the DNA,'" noting "'that's an issue that we are going to have to combat as well.'" Pet'r's Br. at 2; *see also* Resp't's Br. Ex. 1 at 9 (reflecting that Petitioner was present at evidentiary hearing).

An OSBI laboratory report dated November 2, 2005, presumably the report referenced at the October 20, 2006 evidentiary hearing, reflects the exclusion of Petitioner as a contributor to certain DNA profiles obtained from multiple evidentiary samples. *See* Resp't's Br. Ex. 10 at 2 (reflecting further that those samples matched victim's DNA profile). As to one "vaginal swab-sperm fraction" sample that "appears to

be a mixture,"[3] however, the report states that Petitioner and the victim "could not be excluded as potential contributors to th[at] mixture" and provides the probability of selecting a contributor at random from certain populations. *See id.* Petitioner alleges that the prosecutor originally "received DNA results that were 'inconclusive'" and "retested – three (3) times" to obtain the above results. Pet'r's Br. at 6. At or before the October 20, 2006 hearing, the state court granted Petitioner's request to conduct independent testing of the DNA samples at public expense. *See State v. Holden*, No. CF-2005-5216 (Okla. Cnty. Dist. Ct. Oct. 20, 2006); Resp't's Br. Ex. 1 at 9. In December 2006—approximately one month before Petitioner's guilty plea—the state court granted Petitioner's request to contract with a specific independent laboratory to conduct the testing. *See State v. Holden*, No. CF-2005-5216 (Okla. Cnty. Dist. Ct. Dec. 7, 2006); Resp't's Br. Ex. 11, Doc. No. 9-11.

As noted, Petitioner states that in January 2007, he was advised by his plea counsel to plead guilty because "the State had a 'match' and overwhelming evidence against him." Pet'r's Br. at 2. Petitioner states that he later "obtained for himself a copy of the OSBI lab results for the DNA in which it does *not* in fact say that the DNA 'matches' that of [Petitioner]." Pet'r's Br. at 3. It is unclear when Petitioner obtained this copy of the report, but, in the context of Petitioner's statements, it appears to have

---

[3] A mixture is "a DNA typing result originating from two or more individuals." Scientific Working Grp. on DNA Analysis Methods, Interpretation Guidelines for Autosomal STR Typing by Forensic DNA Testing Laboratories 27 (2010), *available at* http://www.fbi.gov/about-us/lab/biometric-analysis/codis/swgdam.pdf.

7

been in 2011, upon which Petitioner "immediately filed for state habeas relief." *See* Pet'r's Br. at 3; *see also* Resp't's Br. Ex. 3 (reflecting Nov. 21, 2011 filing date for Petitioner's state habeas corpus petition).

## ANALYSIS

*A. Limitation Period Under 28 U.S.C. §2244(d)(1)*

A one-year period of limitation applies to any "application for a writ of habeas corpus [filed] by a person in custody pursuant to the judgment of a State court." *See* 28 U.S.C. § 2244(d)(1). This limitation period runs from the latest among four possible dates, only two of which are potentially applicable to the Petition. *See id.*

1. <u>28 U.S.C. § 2244(d)(1)(A)</u>

Most commonly, the one-year limitation period is calculated from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking [direct] review." *See id.* § 2244(d)(1)(A); *Fisher v. Gibson*, 262 F.3d 1135, 1142 (10th Cir. 2001). Under Oklahoma law, the right to appeal a judgment following a guilty plea is limited. Okla. Stat. tit. 22, § 1051(a); *Burnham v. State*, 43 P.3d 387, 389 (Okla. Crim. App. 2002). "First, . . . the defendant must file an application in the trial court to withdraw his plea within ten days of the judgment and sentence, with a request for an evidentiary hearing." *Clayton v. Jones*, 700 F.3d 435, 441 (10th Cir. 2012) (citing Okla. Stat. tit. 22, ch. 18 app., R. 4.2(A)). "If the trial court denies the motion to withdraw, the defendant may then appeal by way of a petition for writ of certiorari." *Id.* (citing Okla. Stat. tit. 22, § 1051(a); Okla. Stat. tit. 22, ch. 18 app., R. 4.2(D)). In such circumstances, the defendant's conviction is considered final upon the

conclusion of the ten-day period. *See Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006).

Petitioner did not apply to withdraw his guilty plea. *See State v. Holden*, No. CF-2005-5216; Resp't's Ex. 1 at 10-14. Thus, Petitioner's conviction became final ten days after the judgment and sentence were entered on February 7, 2007. *See* Okla. Stat. tit. 22, § 1051(a); *id.* ch. 18 app., R. 4.2(A); *Clark*, 468 F.3d at 713. Absent any tolling, discussed below, Petitioner's limitation period to file a federal habeas petition expired in February 2008, one year after his conviction became final. The Petition was not filed until February 2014—six years after the limitation period expired, making it untimely under § 2244(d)(1)(A). *See* 28 U.S.C. §2244(d)(1)(A); *Clark*, 468 F.3d at 713.

2. 28 U.S.C. § 2244(d)(1)(D)

The limitation period may also run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," if that date is later than the date on which the petitioner's judgment became "final" as defined by § 2244(d)(1)(A). 28 U.S.C. § 2244(d)(1)(D).

a. Ground Three

The factual predicate for any claim arising from an allegedly improper interrogation after Petitioner's January 2005 arrest, *see* Pet. at 6; Pet'r's Br. at 1, was discoverable with due diligence at or near the time of the alleged interrogation, which was before Petitioner's judgment became final. Thus, § 2244(d)(1)(D) is inapplicable as to Ground Three.

9

b. Ground Four

The factual predicate for any claim arising from Petitioner allegedly being uninformed regarding his statutory ineligibility for earned credits while in prison, *see* Pet. at 7, could have been discovered with due diligence prior to Petitioner's January 2007 plea agreement or shortly thereafter.[4] Even if Petitioner's plea counsel misinformed him regarding his eligibility for earned credits, the discrepancy was discoverable with due diligence well before Petitioner first pursued postconviction relief in state court in 2012—five years after the alleged misinformation was provided. Thus, to any extent that § 2244(d)(1)(D) is applicable to Ground Four, the claim is nevertheless untimely.

c. Ground Two

The factual predicate for any claim arising from Petitioner allegedly being coerced into accepting the plea agreement or any provision thereof, *see* Pet. at 4, was discoverable with due diligence at the time of the plea in January 2007, if not before. Petitioner

---

[4] The Oklahoma decisional law cited by Petitioner does not support Petitioner's suggestion that he was entitled to information from the convicting court regarding earned credits:

> A defendant's ineligibility for institutional earned credit as a result of his conviction is "not a definite practical consequence of the plea," and therefore the trial court's failure to advise [the defendant] concerning this ineligibility "is not a consequence to be considered in determining that a guilty plea is made voluntarily with the understanding of the consequences of the plea."

*Verduzco*, 217 P.3d at 628 (quoting *Robinson v. State*, 806 P.2d 1128, 1130 (Okla. Crim. App. 1991)). The two other Oklahoma state cases cited by Petitioner, *Pickens* and *Ferguson*, are inapposite as they address only the 85% rule, of which Petitioner admits he was advised. *See* Pet. at 7; Pet'r's Br. at 3, 9-10 (citing *Pickens*, 158 P.3d 482; *Ferguson*, 143 P.3d 218).

suggests that the coercion was not discoverable until he received the September 2007 letter from his counsel stating that counsel believed the agreement, or some portion of it, was the product of coercion. Even if the Court were to accept that contention, the claim is still untimely because the one-year limitation period would have expired in September 2008. *See* 28 U.S.C. § 2244(d)(1)(D). Petitioner waited until 2012 to pursue postconviction relief in state court as to that claim, thereby precluding the benefit of any statutory tolling, as discussed below. *See id.* § 2244(d)(2); *infra* Part B.1. Petitioner did not seek federal habeas relief until February 2014, which is well after the alternative limitation period expired. Thus, to any extent that § 2244(d)(1)(D) is applicable to this aspect of Ground Two, the claim is nevertheless untimely.

Petitioner also asserts that his guilty plea was based, in part, on his plea counsel's representation that "the State had a [DNA] 'match' and overwhelming evidence against him."[5] *See* Pet'r's Br. at 2. In 2011, Petitioner "inquired upon all the evidence and information in regard to his case." Pet'r's Br. at 3. Petitioner suggests that plea counsel's alleged misrepresentation of the State's evidence could not have been

---

[5] Beyond his own sworn statement, Petitioner presents no evidence that plea counsel's alleged DNA "match" statement and subsequent advice to plead guilty were based on a report in the State's possession. As noted, Petitioner was authorized to conduct independent DNA testing, which the record indicates may have taken place within the month or so before plea counsel advised Petitioner to plead guilty. *See* Resp't's Br. Ex. 11. In his September 2007 letter to Petitioner, plea counsel states, "The DNA evidence convinced me and the expert who conducted the analysis . . . of your guilt," but he does not state more specifically the analysis to which he is referring. Resp't's Br. Ex. 3 at 3. Petitioner does not address whether plea counsel's advice may have been based upon the independent test results.

discovered until he conducted that inquiry and allegedly obtained a copy of the 2005 OSBI laboratory report.

The factual predicate for any claim arising from an alleged misrepresentation involving the DNA evidence, *see* Pet. at 4, could have been discovered with due diligence at the time of Petitioner's January 2007 plea, if not before. Petitioner knew of the 2005 OSBI laboratory report by at least October 2006, when the report was discussed during the pretrial evidentiary hearing. *See* Pet'r's Br. at 2; Resp't's Br. Ex. 1 at 9. It is clear that Petitioner knew the specific contents of the OSBI report at the time of the evidentiary hearing, which Petitioner attended, because, as Petitioner himself asserts: the prosecutor at the hearing "admit[ted] the DNA is not a positive match" and also stated that Petitioner "'cannot be excluded as a *potential* donor for the DNA.'" *See* Pet'r's Br. at 2. Petitioner fails to adequately explain the lengthy delay before reviewing the DNA evidence and, thus, presents no reason as to why the alleged misrepresentation could not have been discovered before his conviction became final in February 2007. *See* Pet'r's Br. at 3 (suggesting only that plea counsel's alleged failure to respond to a July 2011 letter "inquiring about [an] early release" prompted Petitioner to action). Because Petitioner's suggestion that the alleged misrepresentation could not have been discovered until 2011 is unavailing, § 2244(d)(1)(D) is inapplicable as to this aspect of Ground Two.

Finally, the factual predicate for any claim as to the involuntariness of Petitioner's plea arising from Petitioner's alleged refusal to personally write the statement of the factual basis for the plea, *see* Pet. at 4, was discoverable at the time Petitioner entered the

plea agreement. Therefore, § 2244(d)(1)(D) is inapplicable as to this separate aspect of Ground Two.

### d. Ground One

As to Ground One, the factual predicate for any claim arising from the failure of the State's DNA evidence to "positively identify [Petitioner]" or from the evidence's "potential[] contamination" at the time of collection, *see* Pet. at 3, could have been discovered through due diligence before Petitioner's plea agreement was entered in January 2007 and, thus, before his conviction became final in February 2007. Thus, § 2244(d)(1)(D) is inapplicable as to Ground One.

Unless statutory or equitable tolling or an equitable exception applies, all grounds for relief in the Petition are untimely raised.

### B. *Tolling of the Limitation Period*

#### 1. Statutory Tolling

The federal habeas limitation period is statutorily tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *Clark*, 468 F.3d at 714. Petitioner did not seek postconviction relief in state court until March 2012—well after expiration of his habeas deadline under either § 2244(d)(1)(A) or § 2244(d)(1)(D). *See* Resp't's Br. Ex. 5; *supra* Part A. Thus, Petitioner is not entitled to statutory tolling. *See Clark*, 468 F.3d at 714 ("Only state petitions for post-conviction relief filed within the one year allowed by [§ 2244(d)(1)] will toll the statute of limitations.").

2. Equitable Tolling

Equitable tolling of the deadline under § 2244(d)(1) applies "in rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (internal quotation marks omitted). The petitioner generally bears the burden of establishing the applicability of equitable tolling by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). Circumstances appropriate for equitable tolling include "when an adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period." *Gibson*, 232 F.3d at 808.

Egregious misconduct by a petitioner's attorney, such as through affirmative misrepresentations about the attorney's actions taken on the petitioner's behalf vis-à-vis the process of pursuing certain types of relief *after* conviction, may be sufficient to warrant equitable tolling. *See Fleming v. Evans*, 481 F.3d 1249, 1256 (10th Cir. 2007). However, neither a prisoner's ignorance of the law nor his attorney's negligence or mistake in pursuing such relief is sufficient to establish the requisite extraordinary circumstances for equitable tolling of the limitation period. *See id.* at 1255-56; *Marsh*, 223 F.3d at 1220.

Petitioner presents no evidence of an extraordinary circumstance that prevented his timely pursuit of federal habeas relief. Petitioner suggests that plea counsel is responsible for not withdrawing Petitioner's guilty plea, contending: "Six (6) days after

14

signing the plea agreement, [Petitioner] handwrote a letter to [his plea counsel], requesting to withdraw his plea. This letter went unanswered until September 2007, some eight (8) month[s] later." Pet'r's Br. at 3. Plea counsel's September 2007 letter to Petitioner discusses the feasibility of seeking sentence modification but does not mention a plea withdrawal or appeal, thereby placing Petitioner on notice that no such actions were being contemplated by plea counsel. *See* Resp't's Br. Ex. 3 at 3-4. Further, Petitioner appeared in state court with his plea counsel in December 2007 but did not seek to withdraw his guilty plea at that time. Resp't's Br. Ex. 1 at 15 (reflecting December 5, 2007 court appearance by Petitioner with plea counsel present). Petitioner was specifically advised in his plea agreement regarding the appeal procedure, including the requirement that a guilty plea must be withdrawn, but he has never sought to do so. *See* Resp't's Br. Ex. 2 at 15; *Case Information*, Okla. State Cts. Network, http://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=cf-2005-5216 (last visited Mar. 11, 2015). To the extent that Petitioner is seeking equitable tolling on the basis of plea counsel's alleged failure to apply to withdraw the guilty plea, Petitioner has established neither a diligent pursuit of his rights nor the presence of an extraordinary circumstance that prevented him from timely seeking federal habeas relief. *See Pace*, 544 U.S. at 418; *Gibson*, 232 F.3d at 808. Thus, equitable tolling is inapplicable.

### C. *Equitable Exception to the Limitation Period*

Petitioner contends that his claims relating to DNA evidence assert his actual innocence and, thus, no procedural or time bars apply to his Petition. *See* Pet. at 9;

Pet'r's Br. at 5 (citing *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013)); *see also* Pet. at 3, 4.

"[A] credible showing of actual innocence" based on newly discovered evidence "may allow a prisoner to pursue his constitutional claims" as to his conviction, under an exception to procedural and limitations-based bars—including those imposed under 28 U.S.C. § 2244(d)(1)(A), (D)—to prevent a miscarriage of justice.[6] *See McQuiggin*, 133 S. Ct. at 1928, 1931-32. Successful actual innocence claims are rare due to the strong evidentiary requirements for such claims. *See id.* at 1928, 1931, 1936; *House v. Bell*, 547 U.S. 518, 538 (2006). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

"Actual innocence claims focus on 'new' evidence—'relevant evidence that was either excluded or unavailable at trial." *Johnson v. Medina*, 547 F. App'x 880, 885 (10th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327-28)). As an initial matter, Petitioner presents, as detailed above, no *new* evidence to the Court. *See Schlup*, 513 U.S. at 327-

---

[6] Although "a prisoner's proof of actual innocence may provide a gateway for federal habeas review of a procedurally defaulted claim of constitutional error," the Supreme Court has never extended this miscarriage of justice exception to "freestanding" actual innocence claims. *McQuiggin*, 133 S. Ct. at 1931-32.

16

29 ("[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). Petitioner was aware of the State's 2005 OSBI laboratory report at least by October 2006. Liberally construed, however, Petitioner asserts he has *newly discovered* that, contrary to the alleged statement of his plea counsel, the State has no conclusive DNA evidence linking Petitioner to the crime (because the State allegedly has only the 2005 OSBI laboratory report, which does not definitively "match" Petitioner to the crime scene evidence). Petitioner asserts, "DNA is a very exact science, in other words it is either a match or it is not." Pet'r's Br. at 6. Petitioner thus contends that the absence of conclusive DNA evidence should exonerate him. *See* Pet'r's Br. at 6. Regardless of whether such discovery is a proper basis, under *Schlup* and *Johnson*, for an actual innocence claim, Petitioner's argument is unavailing.

First, Petitioner asserts that his guilty plea was involuntary because it was based, in part, on plea counsel's alleged misrepresentation regarding the State's DNA evidence. *See* Pet. at 4; Pet'r's Br. at 6-7. However, a petitioner's "claim that his guilty plea was involuntary does not assert that he did not commit the crime to which he pleaded guilty." *Laurson v. Leyba*, 507 F.3d 1230, 1233 (10th Cir. 2007). Such a claim asserts legal insufficiency as to the plea rather than factual innocence and, thus, is ineligible for an equitable exception. *See McQuiggin*, 133 S. Ct. at 1928; *Bousley*, 523 U.S. at 623; *Laurson*, 507 F.3d at 1233.

17

Second, Petitioner's "newly discovered evidence," i.e., that the State's DNA evidence allegedly consists of only the 2005 OSBI laboratory report, is insufficient to meet the strong evidentiary requirements for an actual innocence claim. "DNA testing has an unparalleled ability both to exonerate the wrongly convicted and to identify the guilty." *Dist. Att'y's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 55 (2009). Nevertheless, the precision of DNA analysis can vary depending upon, among other things, the testing method, the quality and quantity of the sample, and the consequent probabilities for including or excluding an individual as a contributor to the sample. *See* Comm. on Identifying the Needs of the Forensic Science Cmty. et al., Nat'l Research Council, *Strengthening Forensic Science in the United States: A Path Forward* 100, 121, 130-32 (2009), *available at* https://www.ncjrs.gov/pdffiles1/nij/grants/228091.pdf; *Principles of Forensic DNA for Officers of the Court: Module 5: Assuring Quality*, President's DNA Initiative, http://projects.nfstc.org/otc/module5/5.0.001.htm (last visited Mar. 11, 2015).[7] When a sample appears to be a mixture, such as the "vaginal swab-sperm fraction" sample described above from which Petitioner could not be excluded as a potential contributor, the results are often difficult to interpret due to added complexities in the analysis. *See generally* Scientific Working Grp. on DNA Analysis Methods, Interpretation Guidelines for Autosomal STR Typing by Forensic DNA Testing

---

[7] The cited source is an online training program for officers of the court, developed by the National Forensic Science Technology Center and the National Institute of Justice in 2005. Module 5 begins at the Internet address provided and spans multiple Internet addresses, which are viewed by navigating to subsequent pages ("Next Page").

Laboratories 7-21 (2010), *available at* http://www.fbi.gov/about-us/lab/biometric-analysis/codis/swgdam.pdf; Itiel E. Dror & Greg Hampikian, 51 Sci. & Just. 204, 204-207 (2011), *available at* http://www.scienceandjusticejournal.com/article/S1355-0306(11)00096-7/pdf.

DNA evidence provides only *some* evidence as to whether a criminal defendant is guilty and must be considered in the context of the evidence as a whole, with the DNA evidence's strength dependent upon multiple case-specific factors. *See Osborne*, 557 U.S. at 62. "Where there is enough other incriminating evidence and an explanation for [a] DNA result, science alone cannot prove a prisoner innocent." *Id.* (citing *House*, 549 U.S. at 540-48). Here, the 2005 OSBI laboratory report alone, as relied upon by Petitioner, is insufficient to establish Petitioner's actual innocence because the strength of the report as evidence must be considered in light of all other evidence against Petitioner, which Petitioner does not address or challenge. *See* Pet.; Pet'r's Br.; Pet'r's Resp.; *see also* Pet'r's Br. at 2 (referencing plea counsel's alleged assertion of DNA "'match' *and* overwhelming evidence against [Petitioner]" (emphasis added)). Essentially, the report does not definitively exclude Petitioner, and Petitioner has not shown that other evidence in the case could not establish his guilt. Petitioner has not satisfied the high standard of persuading the Court "'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *See McQuiggin*, 133 S. Ct. at 1928, 1933, 1935 (quoting *Schlup*, 513 U.S. at 327); *see also Johnson*, 547 F. App'x at 885 (rejecting actual innocence argument when DNA evidence that petitioner offered in support of claim had existed and was known to petitioner at time of guilty plea); *Goosby*

*v. Trammell*, 515 F. App'x 776, 777 (10th Cir. 2013) ("Given [the petitioner's] guilty plea and his failure to address other evidence that contributed to his plea, he fails to carry the heavy burden . . . to invoke the miscarriage of justice exception."). Thus, because Petitioner has not met this threshold requirement, he should not be permitted to bring his constitutional claims through his untimely Petition. *See McQuiggin*, 133 S. Ct. at 1928, 1931-32.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Respondent's motion to dismiss the Petition (Doc. No. 8) be granted.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by March 30, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation terminates the referral in the present case.

ENTERED this 12th day of March, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE